No. 21-55183

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHRIS LANGER

*Plaintiff and Appellant*

*vs.*

MILAN KISER, DIANA KISER

*Defendants and Appellees.*

On Appeal from the United States District Court
Southern District of California,
the Honorable Roger T. Benitez
2:18-CV-06338 PSG-GJS

## BRIEF OF AMICI CURIAE:

**Chinatown Merchants United Association of San Francisco, San Francisco Bar Owner Alliance, Excelsior Action Group, Lakeside Village Business Counsel, Mission Merchants Association, Haight Ashbury Merchants Association, Excelsior Outer Mission Merchants, Valencia Corridor Merchants Association, Balboa Village Merchants Association, Glen Park Merchants Association, Jack Sen Benevolent Association, Hop Wo Benevolent Association, Quong Fook Tong Association and Yee Fung Toy Family Association**

## IN SUPPORT OF MILAN KISER, DIANA KISER PETITION FOR REHEARING *EN BANC*

**All Parties have consented.  Circuit Rule 29-2(a).**

SMRH:4884-8261-8193.6

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
A Limited Liability Partnership
Including Professional Corporations

**Hayley S. Grunvald**, CSB # 227909
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691
hgrunvald@shepparmullin.com

Counsel for *Amici Curiae*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
A Limited Liability Partnership
Including Professional Corporations

**Moji Saniefar**, CSB # 233330
1540 El Camino Real, Suite 120
Menlo Park, California 94025
Telephone: (650) 815-2600
Facsimile: (650) 815-2601
msaniefar@sheppardmullin.com

## STATEMENT OF AUTHORSHIP

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici Curiae* certify that:

1.  No counsel for either party authored this brief in whole or in part;

2.  No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and

3.  No person other than the named *Amici Curiae,* its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief.


Dated:  February 16, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By  _____  */s/ Haley S. Grunvald*
HAYLEY S. GRUNVALD
MOJI SANIEFAR

Attorneys for *Amici Curiae*
Chinatown Merchants United Association
of San Francisco, *et al*.

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici Curiae*

make the following disclosures:

1. Amici are not publicly held corporations;

2. Amici have no parent corporations; and

3. Amici do not have 10% or more of stock owned by a corporation.


Dated: February 16, 2023

> SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
>
>
> By     */s/ Hayley S. Grunvald*
>         HAYLEY S. GRUNVALD
>         MOJI SANIEFAR
>
> Attorneys for *Amici Curiae*
> Chinatown Merchants United Association
> of San Francisco, *et al*.

## CONSENT OF PARTIES TO FILING OF BRIEF
## Circuit Rule 29-2(a)

Pursuant to Circuit Rule 29-2(a), the undersigned attests that all parties to the proceeding have consented to the filing of the brief *Amicus Curiae* of Chinatown Merchants United Association of San Francisco, *et al*.

Dated: February 16, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        */s/ Hayley S. Grunvald*
             HAYLEY S. GRUNVALD
             MOJI SANIEFAR

             Attorneys for *Amici Curiae*
             Chinatown Merchants United Association
             of San Francisco, *et al*.

# TABLE OF CONTENTS

STATEMENT OF INTEREST ............................................................1

    1.   Chinatown Merchants United Association of San  Francisco (CMUASF)........................................4

    2.   San Francisco Bar Owner Alliance (SFBOA) ...........5

    3.   Excelsior Action Group .............................................5

    4.   Lakeside Village Business Council (LVBC) .............5

    5.   Mission Merchants Association (MMA) ...................6

    6.   Haight Ashbury Merchants Association (HAMA) ...................................................................6

    7.   Excelsior Outer Mission Merchants (EOMM)...........6

    8.   Valencia Corridor Merchants Association (VCMA).................................................................7

    9.   Balboa Village Merchants Association (BVMA).................................................................7

    10.   Glen Park Merchants Association (GPMA)...............8

    11.   Jack Sen Benevolent Association (JSBA), Hop Wo  Benevolent Association (HWBA), Quong Fook Tong  Association (QFTA) and Yee Fung Toy Family  Association (YFTFA)...........................8

SUMMARY OF ARGUMENT................................................................8

ARGUMENT ...................................................................................13

I.   Serial ADA Plaintiffs File Lawsuits Targeting Small Business Owners to Make Money and Not For the Purpose of Enforcing the ADA....................................................13

II.     Constitutional Standing Requirements Must Be Followed
        As They Serve a Critical Gatekeeping Function Against
        Meritless and Predatory Litigation and Protect
        Communities. ................................................................................16

III.    Title III of the ADA Has Explicit Language Limiting
        Litigation to Commercial Transactions, and Expanding the
        Right to Sue to "Testers" Violates the Separation of Powers
        of Government. ............................................................................19

CONCLUSION .......................................................................................21

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Langer v. Kiser* (*Langer v. Kiser*
 ___ F.4th ___, 2023 U.S. App. LEXIS 1637, 2023 WL 353215
 (9th Cir. 2023)
 ..........................................................................1, 3, 10, 11, 13, 14, 15, 18

*Lujan v. Defenders of Wildlife* (1992)
 504 U.S. 555 ...................................................................... 15, 16

*Spoken, Inc. v. Robins* (2016)
 136 S.Ct. 1540 ......................................................................... 15

*TransUnion v. Ramirez* (2021)
 141 S.Ct. 2190 ...........................................................11, 15, 16, 18, 19

<u>Statutes</u>

42 U.S.C. § 12182 (7).................................................................. 18

42 U.S.C. § 12182 (a).................................................................. 17

## STATEMENT OF INTEREST

*Amici Curiae* are subjected at a far higher rate to predatory Americans with Disabilities Act ("ADA") litigation because serial ADA plaintiff's lawyers recognize that the justice gap makes them far more likely to settle cases quickly and without prolonged litigation. *Amici Curiae* are fourteen (14) not-for-profit organizations representing well over 1,000 small business members. They are a diverse group, both in the type of goods and services their businesses offer to the public and in their race, color, religion, ancestry, national origin, gender, sexual orientation, age, disability and socioeconomic class. Yet, notwithstanding these differences, *Amici Curiae* have come together as a community of collective voices to move this Court to consider the importance of granting the Kisers' Petition for *En Banc* review. For *Amici Curiae*, the consequences of the *Langer v. Kiser* (*Langer v. Kiser*, ___ F.4th ___, 2023 U.S. App. LEXIS 1637, 2023 WL 353215 (9th Cir. 2023)) decision will greatly impact their livelihood, families, communities and trust and belief in the American judiciary. Indeed, *Amici Curiae*'s unity in filing the instant brief speaks volumes about

the enormity of the consequences they will face if *Langer v. Kiser* stands.

*Amici Curiae* ask this Court to contemplate how the rights of the disabled guaranteed by the ADA can coexist with *Amici Curiae*'s rights under the Constitution to have meaningful access to justice, equal representation and protected from meritless litigation. As the number of ADA cases filed by only a handful of serial litigants, and even fewer law firms, continue to explode and grow in this judicial circuit, *Amici Curiae* have been disproportionately impacted in large part because their members represent marginalized communities with little-to-no meaningful access to justice. Opportunistic lawyers capitalize on *Amici Curiae*'s general lack of familiarity with, and trust in, the American legal system, language barriers, educational inequities and economic constraints, to extract large cash settlements in exchange for dismissals of often unmeritorious ADA lawsuits. *Amici Curiae* are virtually powerless to fight back.

While these predatory lawyers claim to be "Officers of the Court," touting the virtues of promoting the ADA, in reality, they

extort the most vulnerable among us and do so without any consequence. The downstream impact of this type of serial litigation is felt far beyond *Amici Curiae*. These serial lawsuits damage communities already facing manifestations of poverty including substandard housing, hunger, homelessness, inadequate childcare, unsafe neighborhoods, and under-resourced schools and destroy any illusion of living the "American dream." As these serial lawsuits ravage local communities, resulting in closed storefronts and lost jobs, perhaps most tragically, for *Amici Curiae* is their hopelessness about the American judicial system as they acknowledge that the guarantee of rights under the Constitution are merely legal constructs which do not apply to them.

The ADA was simply never intended to be used as a business opportunity for unscrupulous lawyers to generate tens of millions of dollars off the backs of hard-working small business owners, many of whom are minority, immigrant and low-income Americans, who make-up the backbone of California's economy. Make no mistake, these ADA lawsuits are not about promoting the ideals of the ADA; but rather, they are about the illegitimate transfer of wealth from

historically marginalized communities and into the pockets of ADA plaintiff's lawyers.

The Constitutional requirement of Article III standing is a fundamental principle underlying our judicial system. It serves as a gatekeeper to prevent lawyers from filing baseless lawsuits and stands as a safety net for the under-represented and the weakest among us. The *Langer v. Kiser* decision has effectively eviscerated Article III standing in ADA litigation. The consequence of this decision will not only be to further the justice gap, but it will also destroy California's already fledgling small business community still reeling from the impacts of the COVID-19 pandemic.

*Amici Curiae* include the following organizations:

## 1. Chinatown Merchants United Association of San Francisco (CMUASF)

The CMUASF is a non-profit with over 150 merchant members. It is committed to serving and supporting the merchants that operate in San Francisco's historic Chinatown district which has been an integral part of San Francisco's rich and historic Chinese community.

### 2. San Francisco Bar Owner Alliance (SFBOA)

The SFBOA has over 500 bar owner members. It serves to ensure San Francisco's bar scene is vibrant, responsible and affordable and protects the interests of San Francisco's bar, tavern, cocktail lounges, wine bar, beer hall and liquor-heavy restaurants.

### 3. Excelsior Action Group

The EAG's mission is to develop and sustain underserved commercial corridors through small-business capacity building, public and private activation, community real estate and city liaison services, and policy advocacy and activities throughout the community. EAG serves over 500 businesses operating along the district's commercial corridor and provides financial and coaching support to businesses in the Excelsior, Outer Mission and Oceanview neighborhoods of San Francisco.

### 4. Lakeside Village Business Council (LVBC)

The LVBC consists of a mixture of businesses, property owners, and residents. With nearly 500 members, LVBC's mission is to support businesses and residents in community efforts to make Lakeside Village a thriving, safe, fun, inclusive, and beautiful

neighborhood.

### 5. Mission Merchants Association (MMA)

The MMA has over 200 merchant members. It represents San Francisco's Mission District which is one of the oldest in the City and was shaped, in part, by the arrival of primarily Central, but also South American, refugee immigrants from the 1960s through the 1980s. The Mission has historically been the center notable of the City's Chicano/Mexican-American community.

### 6. Haight Ashbury Merchants Association (HAMA)

The HAMA represents approximately 150 storefronts in the Haight Ashbury commercial corridor. It was established to build merchant cooperation, promote, protect, improve, market, advertise, and beautify the historic Haight-Ashbury shopping district and to enhance the overall visitor experience.

### 7. Excelsior Outer Mission Merchants (EOMM)

The EOMM represents the Geneva & Mission area of San Francisco and serves to foster commercial success for local businesses in the Crocker-Amazon, Excelsior and Outer Mission Neighborhoods. EOMM merchant members occupy a geographical

-6-

area that serves several neighborhoods including: Crocker-Amazon, Cayuga Terrace, Excelsior, Mission Terrace and Outer Mission. These neighborhoods are highly diverse and include: 18-29.9% who are Seniors with 54% of these Seniors speaking a language other than English; over 20% of residents are undocumented; 28% are Latino; 47% are Asian American; and 55% are first generation Americans.

## 8. Valencia Corridor Merchants Association (VCMA)

The VCMA has over 70 merchant members. It is a member-operated neighborhood association including merchants in and around the Valencia Corridor. VCMA's mission is to cultivate and beautify the corridor for the benefit of visitors, residents and merchants.

## 9. Balboa Village Merchants Association (BVMA)

The BVMA has over 30 merchant members. It promotes an inclusive business community to merchants on Balboa Street from 30th Avenue to 45th Avenue in the Richmond District of San Francisco. BVMA assists its business and residential community by focusing on maintenance, security, and marketing efforts.

### 10. Glen Park Merchants Association (GPMA)

The GPMA promotes and advocates for small independent businesses in the special, tight-knit neighborhood adjacent to Glen Park Canyon in the city of San Francisco.

### 11. Jack Sen Benevolent Association (JSBA), Hop Wo Benevolent Association (HWBA), Quong Fook Tong Association (QFTA) and Yee Fung Toy Family Association (YFTFA)

The JSBA, HWBA, QFTA and YFTFA are benevolent associations which emerged following the Chinese immigration to San Francisco in the late 19th and early 20th centuries and have been in existence for over 150 years. They was formed out of the need for Chinese immigrants to have organized social, political, and economic representation.

### SUMMARY OF ARGUMENT

At its core, the Kisers' request for *en banc* review rests with this Court's conclusion that it is entirely permissible for a disabled plaintiff to sue a business for technical violations of the ADA without ever visiting it or desiring to visit it for the purpose of enjoying its goods or services, nor with any intention of ever returning. *Amici Curiae* posit that the Court's conclusion is directly

contrary to the Constitutional requirement of Article III standing which necessitates that a plaintiff have a concrete harm for which he or she needs redress. Without some harm to protect, federal courts, being courts of limited jurisdiction, cannot hear the case and fashion a remedy, because the plaintiff has no personal stake in the outcome of the litigation.

Importantly to *Amici Curiae*, the Constitutional requirement of standing fulfills a vital gatekeeping function performed by the judicial branch: it keeps out hypothetical and meritless cases by plaintiffs and thwarts unscrupulous lawyers from using the legal system as a money making enterprise to extort victims with the threat of prolonged litigation if quick monetary settlements are not paid. Irrefutably, the absence of this vital gatekeeping function disparately impacts the most vulnerable populations among us, like *Amici Curiae*, who lack meaningful access to legal services to defend themselves. And without any legal arsenal, and now without Article III's gatekeeping function, the judiciary has, in effect, stripped these populations of their most basic right of access to justice and the protections afforded by the Constitution from

meritless litigation.

Undoubtedly, the Court's removal of this vital gatekeeping function will result in a flood of federal court cases by plaintiff's lawyers who will claim hypothetical "cases" or "controversies" by peddling unharmed plaintiffs from business to business solely for the purpose of illegitimately transferring wealth from hard-working small business owners into their own pockets. Such a result will serve to not only wreak havoc on an already overburdened California federal court system, but will set a dangerous precedent for courts in other judicial circuits.

Indeed, eroding the protections offered by Article III, particularly in the context of predatory ADA cases, will most certainly devastate California's small business community and have nationwide implications for the approximately 31.7 million small businesses that operate in the United States, or 99.9% of all U.S. businesses.[1]   As aptly recognized by the   U.S. Chamber of

---

[1] Found at www.uschamber.com/small-business/state-of-small-business-now#:~:text=Key%20Takeaways%201%20There%20are%2031.7%20million%20small,the%20health%20of%20large%20corporations%20and%20financial%20institutions.

Commerce:

> For the economy to thrive, small businesses need to be in a position where they can grow. Their success drives up the economy and national spending, while their downfall can have an incredibly negative impact on the economy and inflation. Generally speaking, if small businesses are not doing well, corporations and financial institutions are also suffering.

*Id.*

Aside from the impact that the Court's decision in *Langer v. Kiser* will have on the tens of thousands of small businesses, the holding is also directly contrary to the express language contained in the text of the ADA. The ADA was enacted to protect a disabled person's right to the **enjoyment** of the **goods and services** being offered in **commerce** by places of **public accommodation**. To allow an ADA "tester" to sue a defendant under the ADA when they have no intention to use its goods or services undermines the validity of the statute itself. This was surely not the intended result by Congress when enacting the ADA since it expressly included the words "enjoyment", "commerce" and "goods and services" to limit the reach of the statute.

The decision in *Langer v. Kiser* further erodes the separation of powers between the judicial, legislative and executive branches of

government as it creates a right of action for unharmed plaintiffs to file suit to enforce the ADA against businesses.  In passing the ADA, Congress expressly included in Title III the requirements and limitations for an ADA plaintiff to sue businesses, including the desire, attempt or intent to engage in a commercial transaction. *Langer v. Kiser* effectively discards this requirement, thereby allowing private plaintiffs who call themselves "testers" and have no intention in using or accessing the goods and services of a business to stand in the role of the executive branch of government and enforce compliance with the ADA.  As the Supreme Court stated in its 2021 decision in *TransUnion v. Ramirez*, (2021) 141 S.Ct. 2190, 2207, "Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law."  Instead, this is the function of the executive branch of government.

This Court must preserve the integrity of Constitutional standing requirements and the delicate balance of the separation of powers between the branches of government by de-publishing or reversing the order of the Court in *Langer v. Kiser*.

## ARGUMENT

### I. Serial ADA Plaintiffs File Lawsuits Targeting Small Business Owners to Make Money and Not For the Purpose of Enforcing the ADA.

Each year, serial ADA plaintiffs file thousands of boilerplate ADA lawsuits on behalf of a few repeat plaintiffs ("Serial Filers") against California small businesses with little regard to whether those businesses actually violate the ADA and solely for the purpose of demanding monetary settlements. These lawsuits often target businesses in marginalized communities, particularly those that have large populations of immigrants and residents who do not speak English or for whom English is a second language. These defendants are generally less familiar with the intricacies of the American legal system, and are more likely to settle out of fear. These communities can rarely afford the risk and expense of mounting a defense in court, particularly since many are focused on maintaining their most basic living needs. As a result, each year, the significant majority of ADA litigation results in small businesses paying cash settlements, regardless of whether the businesses actually violate the ADA or have defenses available to them to fight

the litigation. They simply have no other option.

In 2019, the State Bar of California issued the California Justice Gap Study where it reported that "[m]any Californians who do not qualify for legal aid based on their income may not be able to afford a private attorney, who have average hourly rates of $323 in California.[2] The study further found that:

> Access to justice is a core tenet of our legal system. Unlike in criminal matters, there is no right to counsel in civil matters[…] Many Californians, regardless of income, are navigating critical civil legal issues without legal representation or meaningful legal assistance— […] Despite all these efforts to increase funding and provide programmatic support and coordination, the justice gap in California persists and may be growing. […] California is the third-largest geographically, and most populous, state in the country, with concentrated urban centers and isolated rural counties; no single ethnic group has a majority population, making California a majority-minority state; California boasts the largest veteran population in the country; and nearly 10 million Californians are immigrants.

*Id*. at 5.

Given California's diverse population and the recognition of

---

[2] Found at https://www.calbar.ca.gov/Portals/0/documents/accessJustice/Justice-Gap-Study-Executive-Summary.pdf at 16.

the justice gap in underrepresented groups in civil litigation, the Court's decision in *Langer v. Kiser* will only serve to exacerbate the inequities that already exist in defending against serial litigation.

In 2021, ADA litigation in the U.S. District Court for the Northern District of California exploded, tripling from 2020. Of those lawsuits, nearly 85 percent were brought by one law firm and on behalf of their serial litigants. Even using conservative estimates, the earnings for the law firm from its ADA litigation was likely over $60 million from 2018 to 2022 alone.[3]

This forced transfer of wealth in just a few years' time is a small glimpse into the devastation that will undoubtedly be felt subsequent to the order issued in *Langer v. Kiser*. The Court has simply made it even easier now to file ADA cases and to collect quick settlements from defendants. The Court's nullification of the important procedural requirement of Constitutional standing, whereby any disabled person can claim to be an ADA "tester" without any intent to use, enjoy or benefit from the goods and

---

[3] Found at www.localnewsmatters.org/2022/10/13/clear-lies-federal-judge-forces-ada-plaintiff-attorneys-to-pay-fine-for-bad-faith-lawsuits/.

services of a place of public accommodation, will expose tens of thousands of businesses from historically underrepresented and marginalized groups and decimate local diverse businesses and communities.

*Amici Curiae* believe that the decision in *Langer v. Kiser* must be reversed. While the Court's suggestion that the rights of a "tester" are limitless, this concept is simply incompatible with a judicial system founded on the principle that any person, regardless of income, must be provided with the protections guaranteed by the Constitution, including the limits on standing as articulated by Article III. Indeed, our legal system only perseveres when the weakest is protected by it.

## II. <u>Constitutional Standing Requirements Must Be Followed As They Serve a Critical Gatekeeping Function Against Meritless and Predatory Litigation and Protect Communities</u>.

As U.S. Supreme Court case law states, to have Article III standing, a plaintiff must have suffered (1) an injury in fact; (2) that is fairly traceable to the defendant; and (3) is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife* (1992)

504 U.S. 555, 560-61.  Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation"—that is, even if the business in question violated the ADA, the lawsuit cannot go forward if that specific plaintiff lacks standing.  *See Spoken, Inc. v. Robins* (2016) 136 S.Ct. 1540, 1549.  "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court . . . .  Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."  *Trans Union, LLC v. Ramirez* (2021) 141 S.Ct. 2190, 2205 ("No concrete harm, no standing.").

Contrary to the Court's ruling in *Langer v. Kiser*, the Supreme Court has confirmed that private plaintiffs must possess Article III standing to sue.  In the Supreme Court's own words from its June 25, 2021 decision in *TransUnion*:

- "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive

Branches, or of private entities. And federal courts do not issue advisory opinions." *Id*. at 2203;

- "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court. As then-Judge Barrett succinctly summarized, 'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.' *Casillas,* 926 F.3d at 332." *Id*. at 2205; and

- "[I]f the law of Article III did not require plaintiffs to demonstrate a 'concrete harm,' Congress could authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law. Such an expansive understanding of Article III would flout constitutional text, history, and precedent. In our view, the public interest that private entities comply with the law cannot 'be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue.' *Lujan,* 504 U.S., at 576-577, 112 S.Ct. 2130." *Id*. at 2206.

The above excerpts from the Supreme Court's 2021

*TransUnion* decision make clear that the concept of "tester" standing under Title III of the ADA cannot survive judicial scrutiny. Simply put, ADA "testers" who suffer no personal or concrete harm, cannot file boilerplate ADA lawsuits merely to bring businesses into compliance with the ADA.

**III.  Title III of the ADA Has Explicit Language Limiting Litigation to Commercial Transactions, and Expanding the Right to Sue to "Testers" Violates the Separation of Powers of Government.**

Not only has the Court in Langer v. Kiser ignored the Constitutional mandates as to Article III standing, but the decision has further eroded the express requirements and limitations of Title III of the ADA.  The ADA's text expressly confirms that an ADA plaintiff suing under Title III must be an actual or intended customer or user of a business's goods or services and not merely an inspector, private attorney general or civil rights advocate desiring to enforce federal laws.  The ADA's purpose, as evidenced in the explicit text of the statute, is to protect a disabled person's right to the "enjoyment" of the "goods, services, facilities [. . .]" of a defendant business in commercial transactions:

> No individual shall be discriminated against on the basis of disability in the full and equal **enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation** by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. §12182 (a) (emphasis added).

Congress intentionally included the word "enjoyment" and "goods, services, facilities, privileges, advantages, or accommodations" in the text of the statute to ensure that disabled persons are guaranteed to "enjoy" the same "goods", "services" and other business offerings when engaging in commercial transactions. Indeed, the introduction to Title III of the ADA expressly dictates that this section of the Act applies to places of "public accommodation" which it defines as those whose operations affect commerce. *See* 42 U.S.C. §12182 (7). Therefore, only when there is a denial of such business/commercial benefit does a disabled plaintiff have a "personal" stake in the case or controversy.

The Court in *Langer v. Kiser* has ignored Title III's limitations and created an entirely new class of private attorney-general litigation, which is unsupported by the ADA. In the process, the

Court has eroded the separation of powers that exists between the judiciary and the legislative and executive branches of government. The Supreme Court in *TransUnion* cautioned against such an approach:

> A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority. We accept the "displacement of the democratically elected branches when necessary to decide an actual case." Roberts, 42 Duke L. J., at 1230. But otherwise, the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch, not within the purview of private plaintiffs (and their attorneys). Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law.

*TransUnion,* 141 S.Ct. at 2207.

**CONCLUSION**

For the reasons set forth above, *Amici Curiae* respectfully request that the Court grant the Kisers' petition for rehearing *en banc*.

Respectfully submitted,

Dated: February 16, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By            */s/ Hayley S. Grunvald*
                 HAYLEY S. GRUNVALD
                 MOJI SANIEFAR

             Attorneys for *Amici Curiae*
      Chinatown Merchants United Association
          of San Francisco, *et al*.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** 21-55183

The undersigned certified that pursuant to Federal Rule of Appellate Procedure, Rule 32(a)(5)(A), and Circuit Rule 29-2(c)(2) this brief uses a 14-point proportionally-spaced font and contains 3,811 words according to the word count feature on the word processor used to prepare this brief, exclusive of the matters that may be omitted under Rule 32(f).

**Signature** _/s/Hayley S. Grunvald_          **Date** 02/16/2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## CERTIFICATE OF SERVICE

**9th Cir. Case Number(s)** 21-55183

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Description of Document(s)** *(required for all documents)*:

<div style="border:1px solid black; padding:10px;">

### BRIEF OF AMICI CURIAE:

**Chinatown Merchants United Association of San Francisco, San Francisco Bar Owner Alliance, Excelsior Action Group, Lakeside Village Business Counsel, Mission Merchants Association, Haight Ashbury Merchants Association, Excelsior Outer Mission Merchants, Valencia Corridor Merchants Association, Balboa Village Merchants Association, Glen Park Merchants Association, Jack Sen Benevolent Association, Hop Wo Benevolent Association, Quong Fook Tong Association and Yee Fung Toy Family Association**

### IN SUPPORT OF MILAN KISER, DIANA KISER PETITION FOR REHEARING *EN BANC*

</div>

**Signature** _/s/ Hayley S. Grunvald_         **Date** 02/16/2023